# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 10-687 (GMS) |
| v. | ) | |
| | ) | **REDACTED –** |
| MOSAID TECHNOLOGIES INC., Phillip | ) | **PUBLIC VERSION** |
| Shaer, and John Lindgren, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## CISCO SYSTEMS, INC'S SECOND SUPPLEMENTAL AND AMENDED COMPLAINT

OF COUNSEL:

Eric R. Lamison, *pro hac vice*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400
eric.lamison@kirkland.com

Steven Cherny, *pro hac vice*
Brian Paul Gearing, *pro hac vice*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
steven.cherny@kirkland.com

Michael W. De Vries, *pro hac vice*
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400
michael.devries@kirkland.com

John M. Desmarais, P.C., *pro hac vice*
DESMARAIS LLP
230 Park Avenue,
New York, NY 10169
(212) 351-3400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Plaintiff Cisco Systems, Inc.*

June 27, 2013 - Original Filing Date
July 5, 2013 - Redacted Filing Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CISCO SYSTEMS, INC.,                    )
                                        )
                    Plaintiff,          )
                                        )    C.A. No. 10-687 (GMS)
          v.                            )
                                        )    **REDACTED –**
MOSAID TECHNOLOGIES INC., Phillip       )    **PUBLIC VERSION**
Shaer, and John Lindgren,               )
                                        )    **JURY TRIAL DEMANDED**
                    Defendants.         )

## CISCO SYSTEMS, INC'S SECOND SUPPLEMENTAL AND AMENDED COMPLAINT

Plaintiff, Cisco Systems, Inc. ("Cisco"), for its Second Supplemental And Amended

Complaint against Defendants MOSAID Technologies Inc. ("MOSAID"), Phillip Shaer, and

John Lindgren, hereby demands a jury trial and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for declaratory judgment of non-infringement and

invalidity of ten United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C.

§§ 2201-02, and the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; for redress for

violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act" or "RICO

Statute"), 18 U.S.C. §§ 1961 *et seq.*; for redress for violations of California Business And

Professions Code Section 17200; for declaratory judgment that MOSAID has unclean hands; and

for such other relief as the Court deems just and proper.

2.

## THE PARTIES

3.      Plaintiff Cisco is a corporation duly organized and existing under the laws of California, having a principal place of business on Tasman Drive, San Jose, CA 95134.

4.      On information and belief, Defendant MOSAID is a corporation duly organized and existing under the laws of Ontario, Canada, having a principal place of business at 11 Hines Road, Kanata, Ontario K2K 2X1, Canada.  MOSAID is in the business of patent acquisition and enforcement and has filed patent law suits in district courts in several venues in the United States, including filing multiple patent infringement actions in Delaware.

5.      On information and belief, Defendant Phillip Shaer is an individual currently residing in Ontario, Canada.  Phillip Shaer is, and has been since at least May 2007, Vice President, General Counsel and Corporate Secretary of MOSAID.

6.      On information and belief, Defendant John Lindgren is an individual currently residing in Ontario, Canada.  John Lindgren is, and has been since at least April 2007, President and Chief Executive Officer of MOSAID.

## BACKGROUND FACTS:  DECLARATORY JUDGMENT CLAIMS

7.      Cisco's claim for declaratory judgment arises in connection with a portfolio of United States patents and applications, originally issued to or applied for by SercoNet, Ltd. ("SercoNet"), that MOSAID now purports to own.  As further set forth below, starting in October 2009, MOSAID began asserting that certain Cisco products allegedly infringe upon certain patents MOSAID claims to have acquired from SercoNet in early 2009.

### MOSAID's October 2, 2009 Demand Letter To Cisco

8.      On October 2, 2009, MOSAID, through its Vice President, General Counsel and Corporate Secretary Phillip Shaer, sent a letter to Mark Chandler, Senior Vice President, General Counsel and Corporate Secretary for Cisco, asserting that:

> MOSAID owns a portfolio of approximately 300 patents and applications related to, among others, Power over Ethernet (**"PoE"**), Voice over IP (**"VoIP"**) and cable modems (**"Modem"**) and Asynchronous DSL (**"ADSL"**) modem technology (the **"Portfolio"**), which we acquired in February 2009 from SercoNet, Ltd. (**'Serconet'**).  MOSAID believes that Cisco Systems, Inc. (**"Cisco"**) sells products that utilize this technology and, thus, requires a license.

9.      In its October 2, 2009 letter, MOSAID claimed to own United States Patent No. 5,841,360 ("the '360 patent"), entitled Distributed Serial Control System, and United States Patent No. 7,035,280 ("the '280 patent"), entitled Local Area Network of Serial Intelligent Cells, and asserted that certain enumerated Cisco "PoE products" "infringe at least Claims 18, 19, 23, 25, 27, 30, 31, 36, 41, 43, 45, 46, and 51 of US Patent No. 7,035,280 and Claims 1, 4-6, and 9 of US Patent No. 5,841,360."  MOSAID also asserted that certain enumerated Cisco "VoIP products" "infringe at least Claims 1, 5, 7, 9, 11, and 15 of US Patent No. 7,035,280."  A true and correct copy of the '360 patent is attached hereto as Exhibit 1.[1]  A true and correct copy of the '280 patent is attached hereto as Exhibit 2.

10.     As further provided in its October 2, 2009 letter, MOSAID claimed to own United States Patent No. 7,292,600 ("the '600 patent"), entitled Local Area Network of Serial Intelligent Cells, and asserted that certain enumerated Cisco cable modem products "infringe at least Claims 59, 61, 62, 70, 74, 82, 126–128 and 138 of US Patent No. 7,292,600."  A true and

---

[1]  Exhibits 1–15 referred to herein were filed with Cisco's Complaint for Declaratory Judgment on August 13, 2010, and thus Cisco does not resubmit them.  *See* D.I. 2.  Exhibit 12 to Cisco's August 13, 2010 Complaint for Declaratory Judgment (the published version of U.S. Patent Application No. 11/264,011 (U.S. Patent Pub. No. 2006/0056444) was updated to reflect the issuance of the U.S. Patent No. 7,830,858 from Application No. 11/264,011 when Cisco filed its first Supplemental and Amended Complaint for Declaratory Judgment on December 2, 2010.  *See* D.I. 19-1.

correct copy of the '600 patent is attached hereto as Exhibit 3. MOSAID also claimed to own United States Patent No. 7,187,695 ("the '695 patent"), entitled Local Area Network of Serial Intelligent Cells, and asserted that certain enumerated Cisco ADSL modem products "infringe at least Claims 1, 3, 4, 12, 16, and 68–70 of US Patent No. 7,187,695." A true and correct copy of the '695 patent is attached hereto as Exhibit 4.

11.     Subsequent to receipt of MOSAID's October 2, 2009 letter, Cisco and MOSAID arranged for meetings and met on at least two occasions with respect to MOSAID's demand to Cisco. ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

12.     ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████

13.  ████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

14.  ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

15.  ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

16.  ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



17.

18.    In May 2010, MOSAID made further assertions of claims against additional enumerated Cisco products, asserting claims of Reexamined United States Patent No. 6,842,459 (the "'459 patent") and United States Patent No. 7,633,966 (the "'966 patent") against enumerated Wireless Access Point products that include cable or ADSL modems, asserting claims of United States Patent No. 7,636,373 (the "'373 patent") against Wireless Access Point products implementing PoE, and asserting claims of United States Patent No. 7,016,368 (the "'368 patent") and United States Patent 7,483,524 (the "'524 patent") against enumerated Cisco Powerline Network Adapter products.  MOSAID also made assertions against enumerated Cisco PoE products under claims that, according to MOSAID, had been allowed in a pending patent application, U.S. Application No. 11/264,011.  Pursuant to its notice of issuance, that application

issued on November 9, 2010 as U.S. Patent No. 7,830,858 (the "'858 patent"). The '858 patent is purportedly related to the '280, '600, '695, and '368 patents. True and correct copies of the '459 (including its reexamination certificate), '373, '966, '368, and '524 patents are attached as Exhibits 7–11. A true and correct copy of the '858 patent is attached as Exhibit 12. Collectively, the ten patents attached as Exhibits 1–4 and 7–12, are referred to herein as the "Patents-in-Suit."

### MOSAID's Improper Assertions Raise A Justiciable Case or Controversy And Make This Case Exceptional Such That MOSAID Should Be Required To Pay Cisco's Fees & Expenses

19.     MOSAID's October 2, 2009 Demand Letter and assertions, ██████

██████████████████████████████████████████████████████

██████████████, provide a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

20.     MOSAID did not invent the technology claimed in the Patents-in-Suit. MOSAID also did not invent the technology claimed in the patents or patent applications in the "portfolio of approximately 300 patents and applications" referred to in its October 2, 2009 letter. Further, MOSAID does not import into the United States or make, sell, or offer for sale any apparatuses or methods practicing any claims of the Patents-in-Suit or any claims of the "portfolio of approximately 300 patents and applications" referenced in its October 2, 2009 letter. Instead, MOSAID claims to have acquired the Patents-in-Suit from SercoNet and has sought, and continues to seek, to extract royalties by accusing Cisco of infringement and demanding that Cisco take a license. ██████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████

21.     MOSAID is not entitled to any royalties from Cisco.  Cisco did not use any technology in the Patents-in-Suit in the design, development, or implementation of Cisco's products.  Cisco has not infringed and does not infringe any claims of the Patents-in-Suit.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████

22.     As a result of MOSAID's improper assertions, including the conduct referenced below, this case is exceptional, and Cisco shall be entitled to an award of reasonable fees and expenses it incurs in this matter.

### BACKGROUND FACTS:  RICO CLAIM; CAL. BUS. & PROF. CODE SECTION 17200 CLAIM; AND UNCLEAN HANDS

23.     ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████

24.     In connection with its alleged acquisition of the SercoNet patents in early 2009, MOSAID issued a press release entitled "MOSAID Expands Into New Markets with Acquisition of 300 Communications Patents."  In that press release, dated February 18, 2009,

10

Mr. Lindgren is quoted as stating: "A key element of our growth strategy, along with continuous innovation, is to expand and diversify our patent licensing activities into new markets through the acquisition of rigorously selected patent portfolios. … These [SercoNet patents] are strong, tested patents, and we look forward to seeing them deliver new licensing revenues." MOSAID's press release suggested that the SercoNet patents related to Power over Ethernet ("PoE") products. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████

25.     Later that year, as described above, MOSAID began asserting that Cisco infringed the SercoNet patents. Shortly thereafter, Cisco filed this action in order to resolve the cloud hanging over Cisco's products as a result of those assertions. MOSAID responded by asserting patent infringement claims against Cisco in this action. In published articles, however, the media questioned what the impact of Cisco's litigation would be on MOSAID's attempt to grow by expanding its licensing efforts into other areas. According to one article, MOSAID responded to these questions by suggesting that "litigation shouldn't dissuade potential investors" and that PoE "could be a massive source of income for MOSAID in the future." In reality, however, MOSAID was concerned that Cisco's pursuit of this action could thwart its efforts to generate revenues from the SercoNet patents for the benefit of MOSAID ████████.

26.     ██████████████████████████████████

████████████████████████████████████████████        ████████

27.     After filing its claims in this action, MOSAID also filed a complaint with the International Trade Commission ("ITC") on May 18, 2011 accusing Cisco and three related entities of importing into the United States products that MOSAID alleged infringed six of the ten Patents-in-Suit at issue in this action (the "ITC Complaint"). Based on the allegations in MOSAID's ITC Complaint, the ITC thereafter instituted Investigation No. 337-TA-778 (the "Investigation"). The named respondents were Cisco, Cisco Consumer Products LLC, Cisco Systems International B.V., and Scientific Atlanta LLC (these last three all wholly-owned subsidiaries of Cisco). Shortly after filing its ITC Complaint, MOSAID sent an email to Cisco stating that MOSAID "felt this filing was necessary given the lack of progress in the Delaware case and Cisco's seem [*sic*] unwillingness to enter into meaningful business discussions."

28.

██████████████████████████████████████████████████████████

████████████████████████████████

29.     At all relevant times, MOSAID's claims were objectively baseless, including because no reasonable litigant could have expected to prevail on them. ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

30.     ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████

31.     ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████



32.

33.

**The RICO Defendants Have Engaged In A Series Of "Wrongdoings"**

(a)     **Overview**

34.

Indeed, an Administrative Law Judge in the ITC found that

had been provided "for an improper purpose," including "to requite [the

witnesses] with 'goodwill' for subpoenas they were obliged to respond to under the law."

(b)     **Background**

35.     On information and belief, at the time MOSAID filed its ITC Complaint,

the RICO Defendants knew that federal law required that a complainant in an ITC Investigation

— here, MOSAID — prove that a "domestic industry" exists or is in the process of being

14

established in the United States with respect to each of the patents asserted in the Investigation. *See* 19 U.S.C. § 1337(a)(2). Consistent with the statutory requirement of a "domestic industry," MOSAID's Complaint in the ITC Investigation asserted that a "domestic industry" existed and would be proved with respect to each of the patents asserted in the Investigation.

36.     At the time of filing the ITC Complaint, however, MOSAID was a Canadian company headquartered in Ottawa, Canada, without any material operations in the United States.   Accordingly, MOSAID's assertions of a "domestic industry" in its ITC Complaint purported to rely on the activities of two of MOSAID's alleged licensees to at least certain of the Patents-in-Suit: ███████████████████████████████████████████. In particular, MOSAID's complaint alleged the existence of a "domestic industry" based on ████████████████████ alleged investments in plant, equipment, capital, labor, engineering, and research and development in the United States with respect to articles allegedly protected by the Patents-in-Suit, which investments MOSAID alleged were substantial.

37.     At the time MOSAID filed the ITC Complaint, and despite MOSAID's allegations of a "domestic industry" in the Complaint, ███████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████

38.     ███████████████████████████████████████████████████

15



**(c)** ███████████████████████████████████

39. ████████ is a provider of certain business communication systems, including voice network switching hardware, enterprise communications software, and IP telephones. ████████ is one of the alleged licensees to some of the Patents-in-Suit on whose activities MOSAID relied for its domestic industry allegations in its Complaint giving rise to the ITC Investigation and whose activities relate to at least MOSAID's damages claims in this case.

40. ███████████████████████████████████

41. ███████████████████████████████████

42. ███████████████████████████████████





██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████

54.    ████████████████████████████████████████████████

██████████████████████████████████████████████  ████████
██████████████████████████████████████████████████  ████
████████████████████████████████████



55.    ██████████████████████████████████████  ████████
████████████████████████████████████████████████  ████

56.    ██████████████████████████████████████████████████
███████████  ████████████████████████████████████████████



59. ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████

60. ███████████████████████████████████████████████████

███████MOSAID, Phillip Shaer, and John Lindgren caused a document subpoena to be

served on ██████

61. On ████████████, MOSAID, Phillip Shaer, and John Lindgren

caused a deposition subpoena to be served on ████████

62. ███████████████████████████████████████████████████

████████████████████████████████████████████████

63. In addition, at the request of MOSAID, including Phillip Shaer and John

Lindgren, ████████ thereafter generated documents and produced them to MOSAID in

connection with the ITC Investigation.

64. ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████

65. ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████



**(d)** ████████████████████████████ **Improper Inducements To** ████████████

66. ███████ is a provider of certain networking, storage, and digital media products. ████████ is another of the alleged licensees to some of the Patents-in-Suit on whose activities MOSAID relied for its domestic industry allegations in the ITC Investigation and whose activities relate to at least MOSAID's damages claims in this case.

67. ████████████████████████████████████████████

68. ████████████████████████████████████████████

69. ████████████████████████████████████████████



70.

71.

72. On         , MOSAID, Phillip Shaer, and John Lindgren caused a document subpoena to be served on

73.

74.

75.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████.

76.  ████████████████████████████████████████████████

█████████████████████████████████████████████████
████████████████████████████████████



77.  █████████████████████████████████████████████████

██████████████████████████████████████████████

78.  █████████████████████████████████████████████████





81. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓ MOSAID, Phillip Shaer, and John Lindgren caused a deposition subpoena to be

served on ▓▓▓▓▓

82. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

83. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

84. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



**(e)**

85.     On December 20, 2012, Cisco and the other respondents in the ITC Investigation filed a Motion to Preclude Complainant from Presenting Certain Evidence Due to Spoliation, Inducements, and Failure to Produce Documents ("Motion to Preclude").

86.     On February 15, 2012, the Administrative Law Judge held a hearing on Respondents' Motion to Preclude.  During the hearing, the Administrative Law Judge stated to MOSAID's counsel:

87.     On February 21, 2012, the Administrative Law Judge issued an order (Order No. 25 in the Investigation) Granting in Part Respondents' Motion to Preclude, which found that "the ▮▮▮ Extension and ▮▮▮ Agreement were provided to ▮▮▮ and ▮▮▮ for an improper purpose…":

> According to Cisco, prior to subpoenaing ▮▮▮ MOSAID provided ▮▮▮ with a three year extension to a five year patent license of the asserted patents "for no apparent consideration" (the "▮▮▮Extension"). (Mot. Mem. at 16; Mot. Exs. 1, 36.) Likewise, prior to subpoenaing ▮▮▮, MOSAID provided ▮▮▮ with a covenant not to sue on the asserted patents for the stated consideration of one dollar (the "▮▮▮Agreement"). (Mot. Mem. at 22; Mot. Ex. 2.) It is undisputed that these two agreements had value that exceeded the consideration

stated in the four corners of the two documents. (*See e.g.,* Reply, Ex. 5 at 134; Mot., Ex. 16 at 60, 62-63; *id.,* Exs. 37-40; Tr. at 333-34.)

███████, MOSAID's ███████████████, testified in deposition that he believed the ████ Extension and ████ Agreement were a "goodwill gesture." (Reply, Ex. 5 at 113-115.) Specifically, ████ stated that "I was hopeful that by showing that goodwill, number one, they would be appreciative, and number two, that when they responded to the subpoena it would be in a form that was understandable to my outside counsel." (*Id.* at 115:17-21. *See also* Tr. at 324:4-16, 325:18-22, 326:22-25.) According to counsel for MOSAID at the hearing, if no subpoenas had been issued to ████ and ████, MOSAID would not have offered them the ████ Extension and ████ Agreement. (Tr. at 327-30.)

The Administrative Law Judge finds that the ████ Extension and ████ Agreement were provided to ████ and ████ for an improper purpose, that is, to requite them with "goodwill" for subpoenas they were obliged to respond to under the law. Therefore, the Administrative Law Judge finds that ████ and ████'s responses, in the form of documents or witness testimony, to MOSAID's subpoenas are compromised and unreliable evidence that must be excluded in their entirety from the Investigation. This includes any expert reliance on ████ or ████ discovery responses or witnesses, internal interviews, or any other information obtained from ████ or ████ after ████ commenced "goodwill" negotiations with these two nonparties for the ████ Extension and ████ Agreement. The

88. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████

89. ████████████████████████████████████

████████████████████████████████████

28



90. ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

(f) ███████████████████████████████████████ **Improper Inducements To Others.**

91. ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████

92. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

**The RICO Defendants Concealed, Obstructed Access To, And Otherwise Spoliated Evidence In The Possession of SercoNet, Ltd.**

**(a)** **Overview**

93. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

94.     At the time that MOSAID acquired the patents and at various points thereafter, SercoNet had in its possession, custody, and control documents relevant and relating to the Patents-in-Suit, including documents relevant and relating to their interpretation, invalidity, unenforceability, allegedly embodying products, sales of those products, and marking, among other matters. ████████████████████████████████████



**(b)** **When MOSAID Acquired The Patents-In-Suit From SercoNet In 2009, The RICO Defendants Anticipated Litigating Them Against Companies, Including Cisco.**

95.     As discussed above, MOSAID is a non-practicing entity whose primary business and source of revenues is from attempts to enforce its patents and has filed numerous lawsuits in this and other courts.

96.

97.

98.

99.

100.

██████████████████████████████████████████████████████████████

██████████

101.    At the time MOSAID acquired the Serconet portfolio, there was pending litigation filed by SercoNet involving one of the asserted patents.

102.    MOSAID, Phillip Shaer, and John Lindgren in fact purported to assert the Patents-in-Suit against Cisco on October 2, 2009 when they sent a demand letter to Cisco requesting a license to the Patents-in-Suit, as described above. ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

103.    ██████████████████████████████████████████████

██████████ as MOSAID actually became involved in the litigation with Cisco regarding all the Patents-in-Suit in August 2010, when this action was filed, and again in May 2011, when MOSAID filed a complaint with the ITC.

**(c)**    ████████████████████████████████████████████████

████████████████████████████████

104.    ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

105.    ██████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████











120.

121.

122.

(f)

123.

124.



125. Furthermore, SercoNet—an Israeli company with no apparent operations outside of Israel ███████████████████████████████████████████ ████████████████████████████████████—stated that it would not participate in the discovery process in the ITC Investigation and would not produce the documents sought by Cisco.

**(g)**

126.

127.



**(h)** ████████████████████████████████████████████
████████████████████████████

131.    At times relevant to the ITC Investigation and this lawsuit, MOSAID, Phillip Shaer, and John Lindgren had control over relevant evidence in SercoNet's possession.

132.    MOSAID, Phillip Shaer, and John Lindgren had an obligation to preserve this evidence at the time it was lost or destroyed or otherwise not preserved.

133.    ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████

134.    ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

135.    ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████

136.    ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

137. 

138.

## SUBJECT MATTER JURISDICTION

139.     This Court has exclusive subject matter jurisdiction over Cisco's claims for a declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.  MOSAID purports to be the owner of all rights to assert the Patents-in-Suit.  MOSAID has asserted that certain Cisco products infringe the Patents-in-Suit as set forth above.  Cisco has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the Patents-in-Suit.  A substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief.

140.     This Court has subject matter jurisdiction over Cisco's claim for violations of the RICO Act pursuant to 28 U.S.C. §§ 1331 and the RICO Act, 18 U.S.C. § 1961 *et seq*.

141.     This Court has subject matter jurisdiction over Cisco's claim for violations of California Business and Professional Code Section 17200 pursuant to 28 U.S.C. §§ 1338(b) and/or 1367(a).

## PERSONAL JURISDICTION

## MOSAID

142.     This Court has personal jurisdiction over MOSAID in this action. MOSAID has contacts with this forum sufficient to satisfy specific or general jurisdiction under

the Delaware Long-Arm Statute (10 Del. C. § 3104(c)) and the Due Process Clause of the Fourteenth Amendment.

143. Personal jurisdiction exists over MOSAID in this action ███████████

████████████████████████████████████████████████████████████████

███████████████████████████

144. In addition, personal jurisdiction over MOSAID in this case arises from MOSAID's multiple contacts with this forum, ███████████████████████

████████████████████████████████████████████████████████████████

███ , availing itself of the Delaware courts in support of its patent monetization scheme including with respect to SercoNet patents it allegedly acquired, entering into agreements with Delaware corporations, common management of a subsidiary previously incorporated in Delaware, and having a registered agent for service of process in the district.

145. Specifically, personal jurisdiction further exists over MOSAID for this particular matter because MOSAID has used Delaware as a forum to assert patents on multiple occasions, including litigation to enforce SercoNet patents that MOSAID allegedly acquired. In the case captioned *MOSAID Technologies, Inc. v. ShoreTel, Inc.*, No. 09-cv-314, filed by MOSAID on April 29, 2009 in the United States District Court for the District of Delaware, MOSAID alleged that ShoreTel, Inc. infringed five patents from the SercoNet Portfolio. Three of those same patents are included in the present case: The '360, '280, and '524 patents. In addition, four of the Patents-in-Suit (the '600, '695, '368 patents, and '858 patent) are purportedly related to parent applications for the '280 patent that was asserted against ShoreTel in the District of Delaware. Therefore, seven of the Patents-in-Suit either were asserted or are related to patents that were asserted by MOSAID in *MOSAID Technologies, Inc. v. ShoreTel,*

*Inc.* Further, MOSAID's Demand Letter to Cisco refers to the Patents-in-Suit as belonging to "a portfolio of approximately 300 patents and applications . . . which we acquired in February 2009 from SercoNet Ltd."

146. In addition to the ShoreTel suit that MOSAID brought in this forum, MOSAID has filed other lawsuits in this forum in connection with patent monetization, further supporting personal jurisdiction in this case. For example, MOSAID filed the action *MOSAID Technologies, Inc. v. IBM Corp.*, No. 09-cv-510 (GMS), in Delaware where the case is currently pending. In another example, on March 9, 2010, MOSAID filed the action *MOSAID Technologies, Inc. v. LSI Corporation and Agere Systems, Inc.*, No. 10-cv-192 (SLR), in Delaware, alleging breaches of warranty and contract related to a patent purchase agreement. As another example, on July 7, 2011, MOSAID filed the action *MOSAID Technologies, Inc. v. Sony Ericsson Mobile Communications (USA) Inc. et al.,* No. 1:11-cv-00598-SLR (CJB) in Delaware. In yet another example, on August 9, 2011, MOSAID filed the action *MOSAID Technologies, Inc. v. Adobe Systems Inc. et al.,* No. 1:11-cv-00698 (GMS) in Delaware.

147. Jurisdiction also exists over MOSAID in this forum because, in addition to its use of this forum in support of its patent assertions, MOSAID has directed and controlled one or more subsidiaries in Delaware, including MOSAID Technologies Corporation and MOSAID Delaware, Inc., engaging in a persistent course of conduct sufficient to establish general jurisdiction in Delaware. By way of example, MOSAID's counsel incorporated in Delaware a subsidiary called MOSAID Delaware, Inc., designating a MOSAID officer and director as the first director and registering an agent for service of process with the Delaware Secretary of State, as evidenced by Exhibits 13–14. Similarly, MOSAID directed and controlled a merger between MOSAID Delaware, Inc. and another company, where the surviving entity was eventually

named MOSAID Technologies Corporation and registered with the Delaware Secretary of State, as evidenced by Exhibit 15. In addition to the above, MOSAID has had multiple additional subsidiaries incorporated in Delaware. Accordingly, in light of MOSAID's persistent course of conduct with respect to Delaware subsidiaries, it is subject to personal jurisdiction in Delaware.

### Phillip Shaer

148. This Court has personal jurisdiction over Phillip Shaer in this action. On information and belief, Phillip Shaer has contacts with this forum sufficient to satisfy specific or general jurisdiction under at least the Delaware Long-Arm Statute (10 Del. C. § 3104(c)) and Due Process Clause of the Fourteenth Amendment or has contacts with the United States sufficient to render this Court's exercise of jurisdiction proper under Federal Rule of Civil Procedure 4(k)(2) and the Due Process Clause of the Fifth Amendment.

149. This Court's personal jurisdiction over Phillip Shaer in this case arises from Phillip Shaer's contacts with this forum, including availing himself of the Delaware courts

150.

151. Alternatively, to the extent he claims not to be subject to personal jurisdiction in any particular state court, Mr. Shaer is subject to personal jurisdiction in this Court pursuant to Federal Rule of Civil Procedure 4(k)(2). This action involves claims that arise under

federal law. Mr. Shaer has had sufficient contacts with the United States as a whole such that this Court's exercise of personal jurisdiction over him comports with the laws of the United States, the Due Process Clause, and reasonableness.

### John Lindgren

152.    This Court has personal jurisdiction over John Lindgren in this action. On information and belief, John Lindgren has contacts with this forum sufficient to satisfy specific or general jurisdiction under at least the Delaware Long-Arm Statute (10 Del. C. § 3104(c)) and the Due Process Clause of the Fourteenth Amendment or under Federal Rule of Civil Procedure 4(k)(2) and the Due Process Clause of the Fifth Amendment.

153.    This Court's personal jurisdiction over John Lindgren in this case arises from John Lindgren's contacts with this forum, ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████

154.    ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ ████████ ████████████████████████

155.    Alternatively, to the extent he claims not to be subject to personal jurisdiction in any particular state court, Mr. Lindgren is subject to personal jurisdiction in this Court pursuant to Federal Rule of Civil Procedure 4(k)(2). This action involves claims that arise under federal law. Mr. Lindgren has had sufficient contacts with the United States as a whole

such that this Court's exercise of personal jurisdiction over him comports with the laws of the United States, the Due Process Clause, and reasonableness.

## VENUE

156.    Venue is proper in this district pursuant to 28 U.S.C. § 1391. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

## COUNT ONE
### Declaratory Judgment of Non-Infringement of the '360 Patent

157.    Cisco incorporates herein by reference the allegations in paragraphs 1–156 above as though fully set forth herein.

158.    Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '360 patent, either literally or under the doctrine of equivalents.

159.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

160.    A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '360 patent.

## COUNT TWO
### Declaratory Judgment of Invalidity of the '360 Patent

161.    Cisco incorporates herein by reference the allegations in paragraphs 1–160 above as though fully set forth herein.

162.    The '360 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

163.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

164.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '360 patent.

## COUNT THREE
### Declaratory Judgment of Non-Infringement of the '280 Patent

165.     Cisco incorporates herein by reference the allegations in paragraphs 1–164 above as though fully set forth herein.

166.     Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '280 patent, either literally or under the doctrine of equivalents.

167.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

168.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '280 patent.

## COUNT FOUR
### Declaratory Judgment of Invalidity of the '280 Patent

169.     Cisco incorporates herein by reference the allegations in paragraphs 1–168 above as though fully set forth herein.

170.     The '280 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

171.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

172.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '280 patent.

## COUNT FIVE
### Declaratory Judgment of Non-Infringement of the '600 Patent

173.     Cisco incorporates herein by reference the allegations in paragraphs 1–172 above as though fully set forth herein.

174.     Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '600 patent, either literally or under the doctrine of equivalents.

175.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

176.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '600 patent.

## COUNT SIX
### Declaratory Judgment of Invalidity of the '600 Patent

177.     Cisco incorporates herein by reference the allegations in paragraphs 1–176 above as though fully set forth herein.

178.     The '600 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

179. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

180. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '600 patent.

## COUNT SEVEN
### Declaratory Judgment of Non-Infringement of the '695 Patent

181. Cisco incorporates herein by reference the allegations in paragraphs 1–180 above as though fully set forth herein.

182. Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '695 patent, either literally or under the doctrine of equivalents.

183. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

184. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '695 patent.

## COUNT EIGHT
### Declaratory Judgment of Invalidity of the '695 Patent

185. Cisco incorporates herein by reference the allegations in paragraphs 1–184 above as though fully set forth herein.

186. The '695 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

187.  As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

188.  A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '695 patent.

## COUNT NINE
### Declaratory Judgment of Non-Infringement of the '459 Patent

189.  Cisco incorporates herein by reference the allegations in paragraphs 1–188 above as though fully set forth herein.

190.  Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '459 patent, either literally or under the doctrine of equivalents.

191.  As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

192.  A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '459 patent.

## COUNT TEN
### Declaratory Judgment of Invalidity of the '459 Patent

193.  Cisco incorporates herein by reference the allegations in paragraphs 1–192 above as though fully set forth herein.

194.  The '459 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

195.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

196.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '459 patent.

### COUNT ELEVEN
### Declaratory Judgment of Non-Infringement of the '373 Patent

197.     Cisco incorporates herein by reference the allegations in paragraphs 1–196 above as though fully set forth herein.

198.     Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '373 patent, either literally or under the doctrine of equivalents.

199.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

200.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '373 patent.

### COUNT TWELVE
### Declaratory Judgment of Invalidity of the '373 Patent

201.     Cisco incorporates herein by reference the allegations in paragraphs 1–200 above as though fully set forth herein.

202.     The '373 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

203.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

204.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '373 patent.

**COUNT THIRTEEN**
**Declaratory Judgment of Non-Infringement of the '966 Patent**

205.     Cisco incorporates herein by reference the allegations in paragraphs 1–204 above as though fully set forth herein.

206.     Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '966 patent, either literally or under the doctrine of equivalents.

207.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

208.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '966 patent.

**COUNT FOURTEEN**
**Declaratory Judgment of Invalidity of the '966 Patent**

209.     Cisco incorporates herein by reference the allegations in paragraphs 1–208 above as though fully set forth herein.

210.     The '966 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

211. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

212. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '966 patent.

## COUNT FIFTEEN
### Declaratory Judgment of Non-Infringement of the '368 Patent

213. Cisco incorporates herein by reference the allegations in paragraphs 1–212 above as though fully set forth herein.

214. Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '368 patent, either literally or under the doctrine of equivalents.

215. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

216. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '368 patent.

## COUNT SIXTEEN
### Declaratory Judgment of Invalidity of the '368 Patent

217. Cisco incorporates herein by reference the allegations in paragraphs 1–216 above as though fully set forth herein.

218. The '368 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

219.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

220.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '368 patent.

## COUNT SEVENTEEN
### Declaratory Judgment of Non-Infringement of the '524 Patent

221.     Cisco incorporates herein by reference the allegations in paragraphs 1–220 above as though fully set forth herein.

222.     Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '524 patent, either literally or under the doctrine of equivalents.

223.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

224.     A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '524 patent.

## COUNT EIGHTEEN
### Declaratory Judgment of Invalidity of the '524 Patent

225.     Cisco incorporates herein by reference the allegations in paragraphs 1–224 above as though fully set forth herein.

226.     The '524 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

227.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

228.    A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '524 patent.

## COUNT NINETEEN
### Declaratory Judgment of Non-Infringement of the '858 Patent

229.    Cisco incorporates herein by reference the allegations in paragraphs 1–228 above as though fully set forth herein.

230.    Cisco has not infringed and does not infringe (directly, contributorily, or by inducement, or in any other manner) any valid and enforceable claim of the '858 patent, either literally or under the doctrine of equivalents.

231.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

232.    A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '858 patent.

## COUNT TWENTY
### Declaratory Judgment of Invalidity of the '858 Patent

233.    Cisco incorporates herein by reference the allegations in paragraphs 1–232 above as though fully set forth herein.

234.    The '858 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

235. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

236. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights with respect to the '858 patent.

### COUNT TWENTY-ONE
### Violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)

237. Cisco incorporates herein by reference the allegations in paragraphs 1–236 above as though fully set forth herein.

238. This is an action arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964. Venue is proper in the District of Delaware under 18 U.S.C. § 1965 and 28 U.S.C. § 1391.

**(a)** **Person**

239. At all times relevant to this action, Defendant MOSAID was a "person," as that term is defined in 18 U.S.C. § 1961(3).

240. At all times relevant to this action, Defendant Phillip Shaer was a "person," as that term is defined in 18 U.S.C. § 1961(3).

241. At all times relevant to this action, Defendant John Lindgren was a "person," as that term is defined in 18 U.S.C. § 1961(3).

**(b)** **Enterprise**

(i) MOSAID and SercoNet

242. At all times relevant to this action, MOSAID and SercoNet were associated in fact and were an "enterprise," as that term is defined in 18 U.S.C. § 1961(4).

243.    Specifically, MOSAID and SercoNet were and are a union or group of entities that are associated in fact, constitute an ongoing organization, and function as a continuing unit. ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████

244.    ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

    (ii)       MOSAID and ████████████

245.    In addition, at all times relevant to this action, MOSAID and ████████ ██████ were associated in fact and were an "enterprise," as that term is defined in 18 U.S.C. § 1961(4), and the actions taken herein for the benefit and to conduct the affairs of the enterprise consisting of MOSAID and SercoNet were also taken for the benefit and to conduct the affairs of the enterprise consisting of MOSAID and █████████.

246.    Specifically, MOSAID and ████████████ were and are a union or group of entities and/or individuals that are associated in fact, constitute an ongoing organization, and function as a continuing unit. ███████████████████████████████████



247. ▮▮▮▮▮▮▮▮▮▮▮

(iii)   MOSAID, SercoNet, and ▮▮▮▮▮▮

248.   In addition, at all times relevant to this action, MOSAID, SercoNet, and ▮▮▮▮▮▮ were associated in fact and were an "enterprise," as that term is defined in 18 U.S.C. § 1961(4), and the actions taken herein for the benefit and to conduct the affairs of the enterprise consisting of MOSAID and SercoNet were also taken for the benefit and to conduct the affairs of the enterprise consisting of MOSAID, SercoNet, and ▮▮▮▮▮▮.

249.   Specifically, MOSAID, SercoNet, and ▮▮▮▮▮▮ were and are a union or group of entities and/or individuals that are associated in fact, constitute an ongoing

organization, and function as a continuing unit. 

        250.

(iv)    MOSAID

        251.    In addition, at all times relevant to this action, MOSAID was an "enterprise," as that term is defined in 18 U.S.C. § 1961(4), and the actions taken herein by Phillip Shaer and John Lindgren were for the benefit and to conduct the affairs of the enterprise consisting of MOSAID.

        252.    Specifically, MOSAID is a corporation and a legal entity, and an ongoing, formal organization.

(c)  **Engaged In Or Affecting Interstate Or Foreign Commerce**

(i)  MOSAID and SercoNet

253.  At all times relevant to this action, the enterprise consisting of MOSAID and SercoNet was engaged in interstate commerce, and the enterprise's activities affected interstate commerce.  The enterprise's activities that constitute engaging in, and that affect, interstate commerce include, but are not limited to, ██████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████

254.  At all times relevant to this action, there was a nexus between the enterprise consisting of MOSAID and SercoNet and interstate commerce by virtue of MOSAID and SercoNet's engagement in, and activities that affected and affect, interstate commerce.

255.  At all times relevant to this action, the enterprise consisting of MOSAID and SercoNet also was engaged in foreign commerce, and the enterprise's activities affected foreign commerce.  The enterprise's activities that constitute engaging in, and that affect, foreign commerce include, but are not limited to, ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████



256.    At all times relevant to this action, there was a nexus between the enterprise consisting of MOSAID and SercoNet and foreign commerce by virtue of MOSAID and SercoNet's engagement in, and activities that affected and affect, foreign commerce.

(ii)    MOSAID and ▮▮▮▮▮▮

257.    At all times relevant to this action, the enterprise consisting of MOSAID and ▮▮▮▮▮▮ was engaged in interstate commerce, and the enterprise's activities affected interstate commerce.  The enterprise's activities that constitute engaging in, and that affect, interstate commerce include, but are not limited to, ▮▮▮▮▮▮▮▮▮

258.    At all times relevant to this action, there was a nexus between the enterprise consisting of MOSAID and ▮▮▮▮▮▮ and interstate commerce by virtue of MOSAID and ▮▮▮▮▮▮'s engagement in, and activities that affected and affect, interstate commerce.

259.    At all times relevant to this action, the enterprise consisting of MOSAID

and ███████████ also was engaged in foreign commerce, and the enterprise's activities affected foreign commerce.  The activities of the enterprise that constitute engaging in, and that affect, foreign commerce include, but are not limited to, ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████

260.   At all times relevant to this action, there was a nexus between the enterprise consisting of MOSAID and ███████████ and foreign commerce by virtue of MOSAID and ███████████'s engagement in, and activities that affected and affect, foreign commerce.

(iii)   MOSAID, SercoNet, and ███████████

261.   At all times relevant to this action, the enterprise consisting of MOSAID, SercoNet, and ███████████ was engaged in interstate commerce, and the enterprise's activities affected interstate commerce.  The enterprise's activities that constitute engaging in, and that affect, interstate commerce include, but are not limited to, ████████████████

62

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

262.    At all times relevant to this action, there was a nexus between the enterprise consisting of MOSAID, SercoNet, and ████████████ and interstate commerce by virtue of MOSAID, SercoNet, and ████████████'s engagement in, and activities that affected and affect, interstate commerce.

263.    At all times relevant to this action, the enterprise consisting of MOSAID, SercoNet, and ████████████ also was engaged in foreign commerce, and the enterprise's activities affected foreign commerce.  The activities of the enterprise that constitute engaging in, and that affect, foreign commerce include, but are not limited to, ████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

264.    At all times relevant to this action, there was a nexus between the enterprise consisting of MOSAID, SercoNet, and ██████████ and foreign commerce by virtue of MOSAID, SercoNet, and ██████████'s engagement in, and activities that affected and affect, foreign commerce.

(iv)    MOSAID

265.    At all times relevant to this action, the enterprise consisting of MOSAID was engaged in interstate commerce, and the enterprise's activities affected interstate commerce. The enterprise's activities that constitute engaging in, and that affect, interstate commerce include, but are not limited to, i) attempting to enforce patents against entities in various states within the United States; ii) making use of interstate travel within the United States in furtherance of the business of the enterprise; iii) purchasing goods and services from various states in furtherance of the business of the enterprise; and iv) collecting revenues from entities, including ████████ in states within the United States based on attempts to enforce the Patents-in-Suit.

266.    At all times relevant to this action, there was a nexus between the enterprise consisting of MOSAID and interstate commerce by virtue of MOSAID's engagement in, and activities that affected and affect, interstate commerce.

267.    At all times relevant to this action, the enterprise consisting of MOSAID also was engaged in foreign commerce, and the enterprise's activities affected foreign commerce. The activities of the enterprise that constitute engaging in, and that affect, foreign commerce include, but are not limited to, i) purchasing patents from, and licensing patents to, companies in foreign countries, including at least the United States and Korea; ii) traveling

64

between Canada and the United States, and to and from other foreign countries, in furtherance of

MOSAID's business of acquiring and licensing patents; ███████████████████████

████████████████████████████████████████████████████████████████████

███████ iv) entering into patent license agreements with entities in countries foreign to the

countries in which MOSAID operates, including the United States; v) participating in patent

litigation in and availing itself of the United States Federal District Courts, including traveling to

and from the United States and Israel in furtherance of such litigation; and vi) purchasing legal

services in the United States.

268.    At all times relevant to this action, there was a nexus between the

enterprise consisting of MOSAID and foreign commerce by virtue of MOSAID engagement in,

and activities that affected and affect, foreign commerce.

**(d)** ████████████████████

269.   ████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

270.   ████████████████████████████████████

████████████████████████████████████

███████████

████████████████████████████████████

████████████████████

271.   ████████████████████████████████████

████████████████████████████████████

██████████

████████████████████████████████████



272.

273.

274.

275.



276.

277.

278.

279.





283.

284.

285.



286.

287.

288.

289.

(e)     **Conducting Of Or Participation In The Enterprise's Affairs**

(i)     Defendant MOSAID

290.    At all times relevant to this action, Defendant MOSAID conducted and

participated in, directly and indirectly, the affairs of the enterprise consisting of MOSAID and

SercoNet, 

291.

292.

293.   At all times relevant to this action, Defendant MOSAID conducted and

participated in, directly and indirectly, the affairs of the enterprise consisting of MOSAID and

.

294.   Defendant MOSAID conducted and participated in, directly or indirectly,

the conduct of the affairs of the enterprise consisting of MOSAID and

295.   MOSAID had and has a substantial part in directing the affairs of the

enterprise consisting of MOSAID and                    , and participates and has participated in

the operation and management of the enterprise. MOSAID, as the assignee and alleged owner of the SercoNet patents, including the Patents-in-Suit, manages the enterprise's affairs aimed at enforcing, litigating, and extracting royalties from the SercoNet patents, and MOSAID has conducted and participated in those affairs ███████████████████████████.

296. At all times relevant to this action, Defendant MOSAID conducted and participated in, directly and indirectly, the affairs of the enterprise consisting of MOSAID, SercoNet, and ██████████.

297. Defendant MOSAID conducted and participated in, directly or indirectly, the conduct of the affairs of the enterprise consisting of MOSAID, SercoNet, and ██████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████

298. MOSAID had and has a substantial part in directing the affairs of the enterprise consisting of MOSAID, SercoNet, and ██████████, and participates and has participated in the operation and management of the enterprise. MOSAID, as the assignee and alleged owner of the SercoNet patents, including the Patents-in-Suit, manages the enterprise's affairs aimed at enforcing, litigating, and extracting royalties from the SercoNet patents, and MOSAID has conducted and participated in those affairs ██████████████████████████████████████████

████████

(ii)  Defendant Phillip Shaer

299. At all times relevant to this action, Defendant Phillip Shaer conducted and participated in, directly and indirectly, the affairs of the enterprise consisting of MOSAID and the other enterprises described herein, ██████████████████████████████████████████

███████████

300.     Defendant Phillip Shaer conducted and participated in, directly and indirectly, the conduct of the affairs of the enterprise consisting of MOSAID and the other enterprises described herein ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

301.     Phillip Shaer had and has a substantial part in directing the affairs of the enterprise consisting of MOSAID and the other enterprises described herein, and participates and has participated in the operation and management of the enterprises.  Phillip Shaer, as the Vice President and General Counsel of MOSAID, manages the enterprises' affairs aimed at enforcing, litigating, and extracting royalties from the SercoNet patents, and Phillip Shaer has conducted and participated in those affairs █████████████████████

(iii)     Defendant John Lindgren

302.     At all times relevant to this action, Defendant John Lindgren conducted and participated in, directly and indirectly, the affairs of the enterprise consisting of MOSAID and the other enterprises described herein, ███████████████████████

█████████████

303.     Defendant John Lindgren conducted and participated in, directly and indirectly, the conduct of the affairs of the enterprise consisting of MOSAID and the other enterprises described herein ██████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████

73

304.    John Lindgren had and has a substantial part in directing the affairs of the enterprise consisting of MOSAID and the other enterprises described herein, and participates and has participated in the operation and management of the enterprises.   John Lindgren, as the President and CEO of MOSAID, manages the enterprises' affairs aimed at enforcing, litigating, and extracting royalties from the SercoNet patents, and John Lindgren has conducted and participated in those affairs ███████████████████████████

**(f)     Injury**

305.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

306.    ████████████████████████████████████████

██████████████████████████████████Cisco has been injured and will continue to be injured in its business and property, having suffered concrete financial loss as a direct and proximate result of the RICO Defendants' racketeering activities, and, therefore, has standing to

sue the RICO Defendants under 18 U.S.C. § 1964(c).

307.    For example, 



- Cisco was required to defend itself in this action and also in ITC Investigation No. 337-TA-778,  causing Cisco to incur concrete injuries including unnecessary and significant expense in the form of substantial fees and costs incurred in litigating this action, defending against MOSAID's claims,

- Cisco employees were required to devote significant time and resources assisting with and participating in the ███████ ITC Investigation and this action, and defending against MOSAID's claims ████████████████████ for example, by gathering and providing documentary and written evidence, preparing for depositions, providing depositions, and preparing for the evidentiary hearing in the Investigation, and such losses of time and resources caused direct financial harm to Cisco's business and property, including without limitation by taking those employees away from other productive pursuits on behalf of Cisco, which caused Cisco to incur significant financial loss, including losses associated with payment for time and resources, and caused business distraction and additional consequent harm to Cisco's business and property.

- For example, Cisco employees gave 22 depositions within a time period of 28 days.  Cisco employees also assisted with the gathering of over 3.5 million pages of documents that were produced in the ITC Investigation and this litigation.   And Cisco responded to 121 interrogatories from MOSAID, which required information and input from Cisco employees.

- The RICO Defendants' conduct caused delay and inconvenience with respect to the district court action and the ITC investigation.



308. As an example

Cisco had to unnecessarily incur substantial fees, costs, burdens, and inconvenience, including in connection with this action, and also conduct and participate in discovery regarding the alleged evidence related to domestic industry and other issues                    and prepare to rebut that evidence, including expenditures relating to the involvement of Cisco's employees and resources in discovery and hearing and trial preparation.

Cisco had and continues to incur the costs, financial amounts, time, resources, inconveniences, and distraction associated with the preparation and conduct of discovery, including in this action (including at least in part after termination of the ITC Investigation),

Cisco had to incur the costs, financial amounts, time, resources, inconveniences, and distraction associated with the preparation and conduct of discovery, including in this action (including at least in part after termination of the ITC Investigation)

Additionally, the injuries to Cisco in the form of substantial loss of time and resources by paid Cisco personnel, business disruption, inconveniences, and the financial injuries associated therewith, in connection with this action and the ITC Investigation,



Cisco has also suffered financial losses, including by way of fees, costs, and other burdens incurred in litigating this action, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ including fees, costs, and burdens incurred in litigating MOSAID's claims in this action and filing and briefing a motion for a temporary restraining order seeking to enjoin MOSAID from continuing to pursue its grounds claims in the ITC. ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the RICO Defendants are liable to Cisco for three times the amount of damages Cisco has sustained ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as well as the costs, including attorneys' fees, incurred by Cisco in prosecuting this RICO claim, and such other relief as may be available.

## COUNT TWENTY-TWO
### California Business And Professions Code Section 17200

309.   Cisco incorporates herein by reference the allegations in paragraphs 1-308 above as though fully set forth herein.

310. This is an action arising under the California Business and Professions Code § 17200 *et seq*. This Court has subject matter jurisdiction pursuant to 18 U.S.C. §§ 1338(b) and 1367. Venue lies in this Court under 28 U.S.C. § 1391.

311. Unfair business practices under Cal. Bus. & Prof. Code § 17200 *et seq*. includes any unfair, unlawful or fraudulent business act or practice. A party suing on the basis of unfair business practices under § 17200 has the right to seek relief for unfair competition in all states.

312. Cisco is a corporation incorporated and having its principal place of business in the State of California.





315.

316.

317.



318.

**COUNT TWENTY-THREE**
**Declaratory Judgment That Unclean Hands Bars Enforcement Of The**
**Patents-In-Suit Against Cisco And Cisco's Products**

319.    Cisco incorporates herein by reference the allegations in paragraphs 1–318
above as though fully set forth herein.



320.

321.

322.

323.    MOSAID had an obligation to preserve SercoNet-related documents and
things because such documents and things were within MOSAID's possession, custody, or
control at a time when litigation involving the SercoNet patents was ongoing with respect to at
least one Patent-in-Suit and at least was reasonably anticipated with respect to the others.



324.

325.

326.

327.

328.

Case 8:14-cv-02006-JLB Document 3-5 Filed 05/13/14 Page 83 of 86

████████████████████████████████████

████████████████████████████

## PRAYER FOR RELIEF

WHEREFORE, Cisco prays for judgment as follows:

a.      A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '360 patent;

b.      A declaration that the '360 patent is invalid;

c.      A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe any claims of the '280 patent.

d.      A declaration that the '280 patent is invalid;

e.      A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '600 patent.

f.      A declaration that the '600 patent is invalid;

g.      A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '695 patent.

h.      A declaration that the '695 patent is invalid;

i.      A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '459 patent.

j.      A declaration that the '459 patent is invalid;

k.      A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '373 patent.

l.      A declaration that the '373 patent is invalid;

m. A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '966 patent.

n. A declaration that the '966 patent is invalid;

o. A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '368 patent.

p. A declaration that the '368 patent is invalid;

q. A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '524 patent.

r. A declaration that the '524 patent is invalid;

s. A declaration that Cisco has not infringed, contributed to the infringement of, or induced others to infringe, any claims of the '858 patent;

t. A declaration that the '858 patent is invalid;

u. A declaration that this case is exceptional and an award to Cisco of its attorneys' fees and expenses, including any expert fees and costs, pursuant to 35 U.S.C. § 285 as well as the inherent authority of the court;

v. A judgment in favor of Cisco and against the RICO Defendants on Cisco's claim under the RICO Act, 18 U.S.C. 1961 *et seq.*;

w. A judgment against the RICO Defendants awarding Cisco threefold the actual damages Cisco sustained as a result of their violations of 18 U.S.C. § 1962(c) and the costs, including attorneys' fees, incurred by Cisco in prosecuting Cisco's RICO claim against the RICO Defendants;

x. A judgment awarding Cisco nominal damages for the RICO Defendants' violations of 18 U.S.C. § 1962(c);

y. A permanent injunction barring the RICO Defendants and all those affiliated therewith from continuing to engage in the conduct described herein;

z. A judgment in favor of Cisco and against the RICO Defendants on Cisco's claim under Cal. Bus. & Prof. Code Section 17200;

aa. A judgment that Cisco be restored to its property and a permanent injunction, pursuant to Cal. Bus. and Prof. Code. § 17203, enjoining the RICO Defendants from any further act of unfair competition, including without limitation any further efforts to assert patents MOSAID acquired from SercoNet against Cisco or anyone else, and from assisting, aiding, or abetting any other person or business entity in asserting SercoNet patents against Cisco or Cisco's products, including without limitation suppliers and customers for Cisco's products;

bb. A declaration that MOSAID has come to and proceeded in this litigation with unclean hands;

cc. A permanent injunction enjoining Defendant MOSAID and the other RICO Defendants from asserting patents MOSAID acquired from SercoNet against Cisco or Cisco's products, and from assisting, aiding or abetting any other person or business entity in asserting SercoNet patents against Cisco or Cisco's products, including without limitation suppliers and customers for Cisco's products;

dd. An accounting as to the revenues and profits obtained by MOSAID and the other RICO Defendants by way of the assertion of patents MOSAID acquired from SercoNet against Cisco or anyone else, including any revenues and profits obtained by them by way of their assertion of those patents against Cisco in this action, and a disgorgement of any such revenues and profits;

ee. Such other and further relief as this Court may deem just and proper.

# DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38.1, Cisco respectfully demands a jury trial of all issues triable to a jury in this action.

Dated:  June 27, 2013
July 5, 2013 - Redacted Filing Date

Respectfully submitted:

By: */s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

Eric R. Lamison, *pro hac vice*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Steven Cherny, *pro hac vice*
Brian Paul Gearing, *pro hac vice*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Michael W. De Vries, *pro hac vice*
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400
michael.devries@kirkland.com

John M. Desmarais, P.C., *pro hac vice*
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

*Attorneys for Plaintiff Cisco Systems, Inc.*